**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION**

| | |
|---|---|
| LALISEA V. BROWN, )<br>    Plaintiff, )<br>)<br>          v. )<br>)<br>NANCY A. BERRYHILL, )<br>Deputy Commissioner for Operations, )<br>Social Security Administration, )<br>    Defendant. ) | CAUSE NO.: 2:18-CV-64-JEM |

**OPINION AND ORDER**

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Lalisea V. Brown on February 14, 2018, and an Opening Memorandum [DE 19], filed August 16, 2018. Plaintiff requests that the decision of the Administrative Law Judge be reversed and remanded for further proceedings. On September 12, 2018, the Commissioner filed a response, and on October 4, 2018, Plaintiff filed a reply.

**I.    Background**

On November 18, 2013, Plaintiff filed applications for benefits alleging that she became disabled on June 30, 2012. Plaintiff's applications were denied initially and upon reconsideration. On November 9, 2016, Administrative Law Judge ("ALJ") Edward Kristof held a hearing at which Plaintiff, Plaintiff's case manager, and a vocational expert ("VE") testified. Plaintiff was represented by an attorney at the hearing. On February 15, 2017, the ALJ issued a decision finding that Plaintiff was not disabled.

The ALJ made the following findings under the required five-step analysis:

1.    The claimant meets the insured status requirements of the Social Security Act through June 30, 2015.

2. The claimant has not engaged in substantial gainful activity since June 30, 2012, the alleged onset date.

3. The claimant has the following severe impairments: fibromyalgia, mild degenerative changes in the lumbar spine and mild degenerative changes in the cervical spine, sleep apnea, mild right shoulder tendinosis and mild left subacromial subdeltoid bursitis and focal tendinitis of the shoulder, obesity, and a bipolar disorder versus depression.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one the listed impairments in 20 CFR 404, Subpart P, Appendix 1.

5. The claimant has the residual functional capacity to lift and carry up to 10 pounds occasionally and nominal weight frequently, stand and/or walk for about 2 hours of an 8 hour workday and sit for about 6 hours of an 8 hour workday. She uses a cane in one hand for standing and walking and cannot operate a motor vehicle as part of her job duties. She can occasionally bend and stoop, and never climb ramps/stairs/ladders/ropes/scaffolds, kneel, crouch, or crawl. She cannot reach overhead bilaterally and can perform no more than frequent handling and fingering. She should avoid exposure to workplace hazards including unprotected heights or moving machinery. She is limited to simple, routine, repetitive tasks; occasional interaction with supervisors and coworkers; no interaction with the general public; and cannot perform assembly line type of work or timed tasks.

6. The claimant is unable to perform any past relevant work.

7. The claimant was 45 years old, which is defined as a younger individual age 45-49, on the alleged disability onset date.

8. The claimant has at least a high school education and is able to communicate in English.

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

> 11. The claimant has not been under a disability, as defined in the Social Security Act, from June 30, 2012, through the date of this decision.

The Appeals Council did not take jurisdiction of the claim, leaving the ALJ's decision the final decision of the Commissioner.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## II. Standard of Review

The Social Security Act authorizes judicial review of the final decision of the Agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses

the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that, as a reviewing court, we may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

### III. Analysis

Plaintiff argues that the ALJ's decision should be remanded because the ALJ erred in evaluating the opinion evidence, did not build a logical bridge between the evidence and his

4

conclusions, erred in finding moderate restrictions in concentration, persistence, or pace, and made a flawed subjective symptom analysis.

"[A] judge should give controlling weight to the treating physician's opinion as long as it is supported by medical findings and consistent with substantial evidence in the record." *Kaminski v. Berryhill*, 894 F.3d 870, 874 (7th Cir. 2018) (citing 20 C.F.R. § 404.1527(c)(2); *Gerstner v. Berryhill*, 879 F.3d 257, 261 (7th Cir. 2018)); *see also Gudgel*, 345 F.3d at 470; *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007). If the ALJ declines to give a treating source's opinion controlling weight, he must still determine what weight to give it according to the following factors: the length, nature, and extent of the physician's treatment relationship with the claimant; whether the physician's opinions were sufficiently supported; how consistent the opinion is with the record as a whole; whether the physician specializes in the medical conditions at issue; and other factors, such as the amount of understanding of the disability programs and their evidentiary requirements or the extent to which an acceptable medical source is familiar with other information in the claimant's case. 20 C.F.R. §§ 404.1527(c)(2)(i)-(ii), (c)(3)-(6); 416.927(c)(2)(i)-(ii), (c)(3)-(6). Furthermore, "whenever an ALJ does reject a treating source's opinion, a sound explanation must be given for that decision." *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011).

Treating doctors Dr. Beth Marnix and Dr. Paul Dobransky completed a Medical Assessment of Ability to Do Work-Related Activities (Mental). AR 1582-83. The ALJ noted that Drs. Marnix and Dobransky found Plaintiff to have a "fair" or "poor/none" ability in 11 out of 14 areas pertaining to occupational, performance, or personal-social adjustments. *Id.* at 31. The ALJ wrote that "[i]t appears that the basis for assessment was self-reported symptoms. As there is no objective evidence

5

to support such extreme functional restrictions (no inpatient hospitalization, etc.) this finding cannot be afforded more than minimal weight." *Id.*

The ALJ's analysis of Dr. Marnix's and Dr. Dobransky's opinions is in error and requires remand. First, "a psychological assessment is by necessity based on the patient's report of symptoms and responses to questioning . . . ." *Aurand v. Colvin*, 654 F. App'x 831, 837 (7th Cir. 2016); *accord Bainter v. Colvin*, No. 13 C 9105, 2015 WL 5177754 at *8 (N.D. Ill. Sept. 2, 2015).

Second, there is objective evidence in the record that supports a finding of significant mental impairments. For example, at one mental status examination, Plaintiff was observed to have a "very nasty" mood and mild paranoia, and she did not know the date. AR 1480. At another office visit, she was unable to complete serial sevens and openly interacted with an imaginary friend in the waiting room and office. *Id.* at 836-37. On a third occasion, her memory was 1 out of 3 on recall and had to be redirected on responding to questions. *Id.* at 700.

Third, the ALJ is not competent to determine whether a Plaintiff's allegations of mental impairment, if true, would require inpatient hospitalization. The Seventh Circuit Court of Appeals has held that, "[t]he administrative law judge went far outside the record when he said that if Voigt were as psychologically afflicted as Day thought, he 'would need to be institutionalized and/or have frequent inpatient treatment'—a medical conjecture that the administrative law judge was not competent to make." *Voigt v. Colvin*, 781 F.3d 871, 876 (7th Cir. 2015) (citing *Browning v. Colvin*, 766 F.3d 702, 705 (7th Cir. 2014); *Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014); *Pate-Fires v. Astrue*, 564 F.3d 935, 946-47 (8th Cir. 2009)). The court went on to explain that "[t]he institutionalization of the mentally ill is generally reserved for persons who are suicidal, otherwise

violent, demented, or (for whatever reason) incapable of taking care of themselves." *Id*. Remand is required for a new evaluation of these opinions.

The ALJ likewise discounted the opinion of Ms. Lucinda Franco, a licensed mental health clinician, in part because the opinion was based on Plaintiff's self-report of her symptoms. On remand, the ALJ is instructed to re-evaluate Ms. Franco's opinion in light of *Aurand*. and the objective evidence in the record.

The ALJ proceeded to give "considerable" weight to the opinions of the state agency consulting physicians. Due to the ALJ's improper reliance on a lack of inpatient hospitalization, misunderstanding of how mental impairments are diagnosed in evaluating the mental health opinions, and failure to discuss evidence in support of significant mental health impairments, these opinions need to be re-evaluated on remand.

The ALJ's evaluation of the treating physician opinions regarding Plaintiff's physical condition provides an independent ground for remand. The ALJ rejected the opinions of Drs. Aitken, Ismail, and Kowlowitz, all of whom made similar functional findings. The ALJ wrote that "there are absolutely no medical records either from Dr. Ismail or any other provider that document findings so severe as to cause [the limitations opined by Dr. Ismail]." AR 30. As the ALJ noted, Dr. Ismail stated that the opinion was derived from history, the medical file, physical therapy reports, laboratory reports, other tests, consultative medical opinions, progress notes, office notes, physical examinations, and x-rays/CT scans/MRIs. The ALJ substituted his own lay opinion for that of the doctor. The ALJ does not have the medical training necessary to interpret medical testing, such as MRIs, to determine what functional limitations would result. *See Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014) (finding that the ALJ played doctor, "a clear no-no" (citing *Blakes ex rel. Wolfe v.*

7

*Barnhart*, 331 F.3d 565, 570 (7th Cir. 2003); *Rohan v. Chater*, 98 F.3d 966, 90 (7th Cir. 1996))). Furthermore, Plaintiff alleges impairments due to fibromyalgia. The ALJ has not explained how evidence of normal range of motion, gait, motor strength, and results from neurological examinations are inconsistent with significant limitations due to fibromyalgia and, thus, show Dr. Ismail's opinion to be inconsistent with the record. *See Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996) ("Since swelling of the joints is not a symptom of fibromyalgia, its absence is no more indicative that the patient's fibromyalgia is not disabling than the absence of headache is an indication that a patient's prostate cancer is not advanced.").

The ALJ also discredits the opinions of Drs. Aitken, Ismail, and Kowlowitz, stating that the doctors made identical findings. However, according to the regulations, consistency is a factor that should weigh in favor of greater weight. 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4). Further, the opinion forms show that the opinions are not identical and contain small differences. For example, Dr. Kowlowitz and Dr. Ismail opined that Plaintiff could "rarely" lift 5 pounds, and Dr. Aitken opined that she could do so "occasionally." AR 1586, 1593, 1615. Dr. Ismail opined that Plaintiff needed to elevate her legs at a 45 degree angle with prolonged sitting, and Dr. Kowlowitz and Dr. Aitken opined that she did not need to elevate her legs. *Id.* at 1588, 1595, 1617. In addition, the ALJ inconsistently did not reject the opinions of state agency Drs. Morris and Vavercan, whose opinions are identical. *See* AR 119-21, 149-51. The ALJ chose to believe that three medical professionals decided to make false statements on the form "to satisfy their patient['s] requests and avoid unnecessary doctor/patient tension," instead of believing that the doctors were basing their opinions on sound medical judgment according to their years of education and experience. More is needed to discredit a doctor's opinion than the ALJ's mere conjecture of sympathy toward the patient. *Moss*

*v. Astrue*, 555 F.3d 556, 560 (7th Cir. 2009) ("An ALJ's conjecture is never a permitted basis for ignoring a treating physician's views.") (citing *Gudgel*, 345 F.3d at 470; *Rohan v. Chater*, 98 F.3d 966, 971 (7th Cir. 1996)).

Due to the errors identified above, the Court need not fully address Plaintiff's remaining arguments. However, on remand, the ALJ is directed to evaluate Plaintiff's allegations of fibromyalgia with an awareness of how the condition is diagnosed and treated and what symptoms are to be expected. Regarding concentration, persistence, and pace, if the ALJ again determines that Plaintiff's reliance on a case worker is a matter of Plaintiff's choice, the ALJ must provide a logical bridge connecting this conclusion to evidence in the record. Further, evaluation of Plaintiff's subjective symptoms must comply with Social Security Ruling 16-3p. 2017 WL 5180304 (Oct. 25, 2017). In addition, in light of the number and character of the ALJ's errors, the Court suggests that this matter be reassigned to a different ALJ on remand.

## IV. Conclusion

For the foregoing reasons, the Court hereby **GRANTS** the Opening Memorandum [DE 19], **REVERSES** the final decision of the Commissioner of Social Security, and **REMANDS** this matter for further proceedings consistent with this opinion.

SO ORDERED this 7th day of February, 2019.

s/ John E. Martin  
MAGISTRATE JUDGE JOHN E. MARTIN  
UNITED STATES DISTRICT COURT

cc: All counsel of record

9